JUSTICE GREEN,
joined by JUSTICE JOHNSON and JUSTICE BROWN, dissenting.
This case presents one issue: Can courts.interfere in disputes about a school district’s authority under the Texas Education Code to request information about homeschool parents providing their, children an education that meets the standard established in Texas Education Agency v. Leeper, 893 S.W.2d 432, 443-44 (Tex.1994), without the Commissioner of Education first having an opportunity to resolve such disputes? Texas Education Code section 7.057 requires that persons aggrieved by the school laws of the state or a school board’s violations of the school laws of the state exhaust administrative remedies. Tex. Educ. Code § 7.057. Yet the Court today ignores our rules of statutory construction and holds that homeschool parents can avoid that exhaustion requirement simply by cloaking their school-law claims in constitutional language. By allowing parties to plead creatively around exhaustion requirements, the Court undercuts the Legislature’s clear language and interprets section 7.057(a)(1) in a way that renders it meaningless and unenforceable. This case could and should have been handled through the school district’s administrative process before proceeding to court.
Under Texas law, all school-aged children must attend public school unless they are enrolled in a “private or parochial school that includes in its course a study of good citizenship” or are otherwise exempted. Id. §§ 25.085(a), .086(a)(1). In our decision in Leeper, we held that section 25.086(a)(l)’s exemption encompassed homeschooled children being taught in a bona fide- manner from a curriculum designed to meet basic education goals of “reading, spelling, grammar, mathematics and a study of good citizenship.” 893 S.W.2d at 439, 443-44. In this interlocutory appeal, the parents of homeschooled children petition this Court for review, arguing that the court of appeals erred in holding that they were required to exhaust administrative remedies before bringing suit and that the school officials sued were entitled to qualified[1] immunity. 457 S.W.Jd 475 (Tex.App.-El Paso 2014, pet. granted). I would hold that the trial court lacked subject matter jurisdiction to hear the case because the McIntyres failed' to exhaust administrative remedies before filing suit. Because the Court holds otherwise, I respectfully dissent.
I. Facts and Procedural History
Michael and Laura McIntyre (the McIn-tyres) decided to homeschool their nine children for religious and financial reasons.[1] Beginning in. January 2005, the McIntyres taught their children in some empty rooms at a motorcycle dealership co-owned by the McIntyres and Tracy McIntyre, Michaels brother. However, in August 2005, because of a dispute between *830 Tracy and the- McIntyres, the McIntyres moved their homeschool to a rental house they owned.
. In January 2006, El Paso Independent School District (EPISD) received an anonymous call informing EPISD that children were at the McIntyres’ residence all day. EPISD’s Office of Pupil Services sent a truant officer to check on the McIntyres’ home and the rental house in early February 2006. . It is unclear who spoke with the truant officer during the home visit.. The officer testified in, his deposition that he spoke with two young men at the home, who could not tell him anything about the McIntyres’ homeschool, and that he told the men to tell the McIntyres to call Pupil Services. The officer’s testimony is corroborated by the residence check form he filled out after the visit. Michael testified that he spoke with the officer and told the officer that he was homeschooling his children, which the officer reportedly assured him was legal, but the officer requested that Michael call Pupil Services and inform them. In her affidavit, Laura stated that she called Pupil Services and left a message, informing them that she and her husband were homeschooling their children.[2]
After the February 2006 visit, EPISD did not try to contact the McIntyres again until December. In the intervening months, Tori McIntyre, the McIntyres’ eldest daughter, ran away from home and went to live with her aunt and uncle, Ka~ thryn and Maby McIntyre, because she wanted to attend school. Kathryn enrolled Tori in Coronado High School. Even though Tori was seventeen, she was placed in ninth grade because she could not account for her education while she was being homeschooled by her parents,[3] As a result, in November 2006, Gene and Shirene McIntyre, Tori’s grandparents and Michael’s parents, went to Pupil Services and spoke with the Director of Pupil Services, Mark Mendoza,[4] about their concern for their other grandchildren’s education.
In December 2006, Mendoza sent the truant officer to verify that children were living at the McIntyre residence. After he verified that children lived at the address and that Tori had been placed in ninth grade, Mendoza’s secretary contacted a counselor from the middle school and asked her to go to the McIntyre residence. The counselor visited the house and asked the McIntyres to submit a curriculum to EPISD. When the McIntyres refused to submit the curriculum, Mendoza’s secretary contacted a counselor at the elementary school and asked her to go to the McIntyre residence and have them sign a homeschool verification form. The counselor took the form to the house and asked the McIntyres to sign the form. The McIntyres refused, handed the counselor a telephone, and told her to speak to their attorney.[5]
After that home visit, the McIntyres’ attorney[6] wrote a letter to the counselor *831 informing her that the McIntyres were educating their children in a bona fide manner and would not provide any other information to EPISD. Because the McIntyres refused to sign the homeschool verification form, Mendoza sent the McIn-tyres a Notice of Absences for each of the children and requested that the McIntyres meet with him or another attendance officer to avoid prosecution. In response, the McIntyres’ attorney sent another letter again stating that the McIntyres would not provide any more information to EPISD.
In February and March 2007, EPISD filed individual criminal complaints against the McIntyres and three of their children for contributing to truancy and failure to attend school, respectively. Laura called Mendoza to ask about the complaints. Mendoza asked her to meet with him to discuss the complaints, but the McIntyres never met with Mendoza. Matt Moore, the district attorney assigned to the case, sent the McIntyres a letter in September 2007, offering to dismiss the case if they would sign the bottom of his letter, stating that they were using a curriculum that met the basic educational goals of reading, writing, spelling, math, and a study of good citizenship. The McIntyres refused. Nevertheless, Moore moved to dismiss the complaints against the McIntyre children in October 2007 and against the McIntyres in November 2007.[7]
On July 12, 2007, the McIntyres filed a petition for declaratory judgment with the 168th District Court against Tracy, the grandparents, EPISD, Mendoza, and other EPISD employees (collectively, the defendants). The McIntyres alleged that the defendants violated state and federal law and their rights under the Texas and United States Constitutions and the Texas Religious Freedom Restoration Act (TRFRA).[8] EPISD, Mendoza, and the other EPISD employees (collectively, the District defendants) filed a motion to dismiss and plea to the jurisdiction, arguing that because the McIntyres failed to exhaust administrative remedies, they could not bring suit against the District defendants. The trial court denied the District defendants’ plea, and they appealed.
At the court of appeals, the District defendants argued, among other things, that the trial court erred in denying their plea to the jurisdiction because the McIn-tyres failed to exhaust administrative remedies and the EPISD employees were entitled to qualified immunity. The court of appeals held that the EPISD employees were entitled to qualified • immunity and that the state law claims against the District defendants should be dismissed because the McIntyres failed to exhaust administrative remedies before filing suit against the District defendants. 457 S.W.3d at 499.
II. Exhaustion of Administrative Remedies
When an agency has exclusive jurisdiction over a dispute, the aggrieved party must exhaust administrative remedies before seeking redress in court. Cash Am. Int’l Inc. v. Bennett, 35 S.W.3d 12, 15 (Tex.2000). “When the Legislature grants an administrative agency sole authority to make an initial determination in a dispute, *832 agency jurisdiction is exclusive.” City of Hous. v. Rhule, 417 S.W.3d 440, 442 (Tex. 2013) (per curiam). The trial court does not have subject matter jurisdiction over a case that is within an agency’s - exclusive jurisdiction until the aggrieved party has exhausted administrative remedies. Id. As a result, the trial court must dismiss a case within an agency’s exclusive jurisdiction if the aggrieved party has failed to exhaust administrative remedies. Id.
With some exceptions, under section 7.057(a) of the Texas Education Code, the Commissioner of Education has the power to hear appeals from persons aggrieved by:
(1) the school laws of this state; or
(2) actions or decisions of any school district board of trustees that violate:
(A) the school laws of this state; or
(B) a provision of a written employment contract between the school district and a school district employee, if a violation causes or would cause monetary harm to the employee.
Tex. Educ. Code § 7.057(a). Accordingly, Texas courts have long held that a person aggrieved by the school laws of the state must exhaust administrative remedies before filing suit. E.g., Warren v. Sanger Indep. Sch. Dist., 116 Tex. 183, 288 S.W. 159, 160 (1926) (“It has been uniformly held that the resort to the school authorities must first be made before the courts will be authorized to hear any complaint as to a matter properly belonging to the administration of the school laws. It is a condition precedent to the exercise of the jurisdiction of the civil courts.”); Ollie v. Plano Indep. Sch. Dist., 383 S.W.3d 783, 792 (Tex.App.-Dallas 2012, pet. denied); Gutierrez v. Laredo Indep. Sch. Dist., 139 S.W.3d 363, 366 (Tex.App.-San Antonio 2004, no pet.); Jones v. Clarksville Indep. Sch. Dist., 46 S.W.3d 467, 471 (Tex.App.-Texarkana 2001, no pet.); Jackson v. Hous. Indep. Sch. Dist., 994 S.W.2d 396, 401 (Tex.App.-Houston [14th Dist.] 1999, no pet.); Chastain v. Mauldin, 32 S.W.2d 235, 237 (Tex.Civ.App.-Austin 1930, no writ). “It is a well-established rule that in all matters pertaining to the administration of school laws involving questions of fact ... resort must first be had to the school authorities and the method of appeal there provided for exhausted before the courts will entertain jurisdiction.” Mission Indep. Sch. Dist. v. Diserens, 144 Tex. 107, 188 S.W.2d 568, 570 (1945) (quoting State ex rel. Nevills v. Sanderson, 88 S.W.2d 1069, 1070 (Tex.Civ.App.-Waco 1935, no writ)). The purpose of the exhaustion requirement is not to deprive a party of legal rights, but to provide a procedure through which the party can enforce its rights. Rhule, 417 S.W.3d at 442.
EPISD maintains a policy for resolution of complaints by the public. Under the policy, EPISD provides three levels of administrative review that the complainant must take advantage of to resolve any disputes. The policy provides:
LEVEL ONE An individual who has a complaint or concern shall request a conference with the appropriate administrator within 15 days of the event or action that is the subject of the complaint. The administrator shall hold a conference with the individual within seven days of the request. The administrator shall have seven days following the conference within which to respond in writing to the complainant.
LEVEL TWO If the outcome of the conference with the administrator is not to the complainant’s satisfaction or the time for a response has expired, the complainant may request a conference with the superintendent or designee. The request must be filed within seven days following receipt of a response or, *833 if no response is received, within seven days of the response deadline. The superintendent or designee shall hold the conference within seven days after receiving the request.
Prior to or at the time of the conference the complainant shall submit a written complaint that includes his or her signed statement of the complaint, any evidence in its support, the solution sought, and the date of the' conference with the administrator. The superintendent or designee shall have seven days following the conference within which to respond in writing to the complainant. LEVEL THREE If the outcome of a conference with the superintendent or designee is not to the complainant’s satisfaction or if the time for a response has expired, the complainant may submit to the superiritendent or designee a request to place the matter on the agenda of a future Board meeting. The request shall be in writing and must be filed within seven days of the response or, if no response is received, within seven days of the response deadline.
The superintendent shall inform the complainant of the date, time, and place of the meeting in writing.
The McIntyres argue that they are exempted from the exhaustion of administrative remedies requirement because the requirement does not apply to them as a private homeschool. They assert that because section 7.057(f)(2) defines “school laws of the state” to mean Titles 1 and 2 of the Education Code and all rules adopted thereunder, they are exempted because Titles 1 and 2 govern only public schools, not private schools. See Tex, Educ. Code §§ 1.001(a), 7.057(f)(2). Under their construction of the exhaustion requirement, only public school students and parents are required to exhaust administrative remedies prior to filing suit' against the school district and its employees. While the McIntyres are correct that Titles 1 and 2 govern only public schools, they incorrectly conclude that they are therefore exempt from the exhaustion requirement because their children do hot attend public school. The attendance requirements and applicability of exemptions from those requirements are squarely within Title 2 of the Education Code. See id. §§ 25.085, .086(a)(1). Simply because homeschools are exempt from the compulsory attendance requirement does not mean that they are also exempt from section 7.057(a)’s exhaustion of administrative remedies requirement when they have a grievance with the school district’s application of the attendance laws. See id. § 7.057(a).
Section 7.057(a), found in Title 2 of the Education Code, provides an appeal for any person aggrieved by the school laws of the state or an action by a public school board that violates the school laws of the state. Id, This section does not limit appeals to school district employees and public school parents and students. The section, for example, does not preclude a construction contractor from appealing to the Commissioner based on a school board decision that violates the school laws of the state. Under the McIntyres’ interpretation, the contractor would not be required to exhaust administrative remedies on a dispute that arises from a school board’s unlawful action because the contractor is not governed by Titles 1 and 2 of the Education Code. Section 7.057(a) and its predecessors have never been interpreted in this way.[9] The McIntyres, *834 Regardless of - their status as parents of homeschooled children, are required to exhaust administrative remedies if they are aggrieved by the school laws of the state or a school board’s violations of the school laws of the state. Id.
The Court suggests that the McIntyres are not aggrieved by the school laws of the state because they do not allege that any of the school laws are unconstitutional. 499 S.W,3d at 825. Under this interpretation of section 7.057(a)(1), an aggrieved party must appeal to the Commissioner of Education whenever the party challenges a school law as unconstitutional. The Commissioner of Education, however, does not have authority to decide whether, a law is unconstitutional. See Edwards Aquifer Auth. v. Day, 369 S.W.3d 814, 844 (Tex. 2012) (citing Cent. Power & Light Co. v. Sharp, 960 S.W.2d 617, 618 (Tex.1997) (per curiam)) (holding that agencies lack the authority to decide whether a statute is constitutional). Requiring that plaintiffs mount a constitutional challenge to the school laws for section 7.057(a)(l)’s exhaustion requirement to apply renders that section of the law meaningless and unenforceable, a result we cannot reach. See Crosstex Energy Servs., L.P. v. Pro Plus, Inc., 430 S.W.3d 384, 390 (Tex.2014) (“We must, not interpret the statute in a manner that renders any part of the statute meaningless or superfluous.”); Columbia Med. Ctr. of Las Colinas, Inc. v. Hogue, 271 S.W.3d 238, 256 (Tex.2008) (“The Court must not interpret the statute in a manner that renders any part of the statute meaningless or superfluous.”); Spence v. Fenchler, 107 Tex. 443, 180 S.W. 597, 601 (1915) (“It is an -elementary rule of construction that ,,, effect must be given to every sentence, clause, and word of a statute so that no part thereof be rendered superfluous or inoperative.”). Contrary to the Court’s assertion, I am not concerned that the Court “construe[s] the exhaustion statute too narrowly.” 499 S.W.3d at 827. I am concerned that the Court does away with part of the exhaustion statute altogether.
“In construing statutes, we ascertain and give effect to the Legislature’s intent as expressed by the language of the statute.” City of Rockwall v. Hughes, 246 S.W.3d 621, 625 (Tex.2008). We presume that the Legislature “deliberately and purposefully selects words and phrases it enacts, as well as deliberately .and purposefully omits words and phrases it does not enact.” Tex. Mut. Ins. Co. v. Ruttiger, 381 S.W.3d 430, 452 (Tex.2012). Therefore, we construe the language of the statute according to its plain and common meaning unless such a construction leads to an “absurd or- nonsensical” result. Ross v. St. Luke’s Episcopal Hosp., 462 S.W.3d 496, 501 (Tex.2015). To determine a word’s common and ordinary meaning, “we look to a wide variety of sources, including dictionary definitions.” Jaster v. Comet II Constr., Inc., 438 S.W.3d 556, 563 (Tex. 2014).
Under section 7.057(a)(1), persons “aggrieved by ... the school laws of this state” must exhaust their administrative remedies before bringing suit in district court. Tex. Educ. Code § 7.057(a)(1); see *835 Warren, 288 S.W. at 160 (“[RJesort to the school authorities must first be made before the courts will he authorized to hear any complaint as to a matter properly belonging ■ to the administration of the school laws”).' According to Webster’s International Dictionary, to “aggrieve” means “to inflict injury upon,” and “by” means “through the means or instrumentality of.” Aggrieve, By, Webster’s Third New INTERNATIONAL DICTIONARY 41, 307 (2002). Therefore, persons “aggrieved by” the school laws of the state refers to persons injured through the means or instrumentality of Education Code Titles 1 and 2 and the rules adopted thereunder.
Over one hundred years ago, this Court recognized the prevalence of the term “aggrieved” in statutes. Peavy v. Goss, 90 Tex. 89, 37 S.W. 317, 319 (1896). The Court noted in Peavy that “aggrieved by” a court judgment had “usually been con-struéd to mean any person having an interest recognized by law in the subject-matter of the judgment which he considers injuriously affected by the action of the court.” Id. Defining “aggrieved by,” the Court stated: “In a legal sense, a person is aggrieved by an act when a legal right is invaded by the act complained of.” Id. (holding that a parent was aggrieved when her “legal right to keep [her child] away from temptation” was infringed by a liquor vendor’s violation of state law prohibiting the sale of liquor to minors)’. In a similar case, the Court later reiterated that a person is “aggrieved” when that .person is “injured in her rights by such conduct” complained of Ellis v. Brooks, 101 Tex. 591, 102 S.W. 94, 96 (1907). In the more than one’ hundred years since, courts of appeals have been applying a similar definition of “aggrieved by.” See, e.g., Ins. Co. of Pa. v. Orosco, 170 S.W.3d 129, 132-33 (Tex.App.-San Antonio 2005, no' pet.) (“[A]n aggrieved party is commonly defined as one who has suffered a loss or injury.” (citing Black’s Law Dictionary 60 (5th ed.1979)); Cty. of El Paso v. Ortega, 847 S.W.2d 436, 442 (Tex.App-El Paso 1993, no writ) (“An aggrieved party is one who has an interest recognized by law which is injuriously affected by the trial court’s judgment,”); City of Hous. v. Pub. Util. Comm’n of Tex., 618 S.W.2d 428, 431 (Tex.App.-Austin 1981, writ refd n.r.e.) (“The term ‘aggrieved’ refers to a substantial grievance, a denial of some personal or property right or the imposition of a burden or obligation upon a party.”). .More recently, in Hooks v. Texas Department of Water Resources, we determined that “[t]he terms ‘aggrieved’ and ‘affected’ are synonymous.” 611 S.W.2d 417, 419 (Tex. 1981) (holding that riparian landowners had standing to bring an action in district court challenging the Department of Water Resources’s proposed location of a sewage treatment plant).
While most of this Court’s analysis of “aggrieved by” has focused on when a party may appeal to district court, the core principle applies in this context as well—a person is aggrieved when his or her legal rights are invaded, infringed upon, or adversely affected by the act or conduct complained of. When the statute requires exhaustion of administrative remedies for a person “aggrieved by. ... the school laws of this state,” the exhaustion requirement applies when the person alleges that his or her legal rights have been invaded, infringed upon, or adversely affected by the school laws themselves or acts or conduct pursuant to the school laws of the state.
When reviewing jurisdictional questions, such as whether a party must exhaust administrative remedies, we review the pleadings as a whole, looking to the pleader’s intent, and construe them liberally in favor of the plaintiffs. City of Hous. v. Williams, 353 S.W.3d 128, 141 (Tex.2011). The Court’s reasoning today allows the *836 McIntyres to plead around the exhaustion requirement by simply alleging constitutional claims. As we recently held in Clint Independent School District v. Marquez (Clint ISD), however, “[t]he nature of the claims, rather than the nomenclature, controls, and artful pleadings cannot circumvent statutory jurisdictional prerequisites.” 487 S.W.3d 588, 547 (Tex.2016). “Creative pleading does not change the nature of a claim.” Sampson v. Univ. of Tex. at Austin, 500 S.W.3d 380, 386 (Tex.2016). The McIntyres’ allegation of constitutional grievances should not allow them to circumvent the true nature of their claims—a grievance' with EPISD and its authority under the school laws—and the Legislature’s clear intent that such claims be resolved first through the administrative process.[10]
We review the pleadings in light of the statutes in effect at the time of injury. Rhule, 417 S.W.3d at 442. To determine whether the McIntyres are aggrieved by the school laws of the state, we review their petitions and other pleadings filed in the trial court. While the McIntyres do not expressly allege violations of the Education Code in their most recent amended petition, they are clearly seeking relief from actions taken by EPISD and Mendoza under the direct authority of the Education Code, and they challenge that authority. See Clint ISD, 487 S.W.3d at 559 (holding that even though the plaintiffs alleged only constitutional violations, their petition as a whole reflected that the true nature of their complaint was one for violations of the Education Code).
Under Education Code section 11.002, school districts have the primary responsibility for ensuring that students comply áh the Education Code, including section 385(a)’s compulsory attendance requirement. Tex. Educ. Code §§ 11.002, 25.085(a). The McIntyres claim that, under Leeper’s interpretation of Education Code provisions, they are exempt from section 25.085(a)’s requirement that all children attend school because they are homeschooling their children. Their most recent petition, therefore, asks the trial court to declare that they are innocent of all charges filed against them by EPISD. In their second amended petition, the McIntyres even asked for “a declaration *837 that they were, and are, in compliance with the Texas Education Code sections under which they were charged and prosecuted.” [11]
The Court is simply wrong in saying that the McIntyres allege only violations of their rights under the Texas Constitution. 499 S.W.3d at 826. In every version of their petition, the McIntyres have asserted that they “have fully complied with Texas law regarding the education of their children in their private school” and that “[t]he Defendant’s actions have undermined those rights which were clearly established in the Leeper decision.” In Leeper, we interpreted the predecessor to section 25.086(a) to include homeschools in the definition of private schools exempted from section 25.085(a)’s compulsory attendance requirement. 893 S.W.2d at 443-44. The McIntyres claim that EP-ISD violated their rights as established by Leeper, but Leeper only interpreted rights under the Education Code; it did not establish that parents have a right to homeschool under the Texas or United States Constitutions. See id. at 446 (“[W]e do not reach [the parents’] constitutional arguments under § 1983. The [TEA’S resolution] acknowledged that home schooling may involve constitutional claims of religious freedom. Our decision today need not, and does not, address such claims.”). Therefore, for the trial court to find that EPISD undermined the McIntyres’ rights to homeschool their children as established by Leeper, it would have to find that the McIntyres’ rights under the Education Code, not under the Texas or United States Constitutions, were violated. Under the Court’s opinion, whenever a student or parent challenges a school district’s use of its authority under the Education Code to determine whether a student or parent is in compliance with Leeper, the dispute may go straight to court, instead of first allowing the school board and Commissioner the opportunity to resolve such disputes consistently and without court interference. By failing to recognize that the McIntyres allege their claims under their rights pursuant to Leeper, and thus pursuant to the Education Code, the Court effectively writes Leeper out of the school laws.
Furthermore, to declare that the McIn-tyres are innocent of all claims, the trial court would have to find that the McIn-tyres qualify for the exemption provided in Education Code section 25.086(a)(1). See Tex. Eduo. Code § 25.086(a)(1) (exempting attendees of a private or parochial school from the compulsory attendance réquirement). Whether the exemption applies in this case is necessarily a fact question, which, at this stage, is best resolved by the school board or Commissioner rather than the court. See Mission Indep. Sch. Dist., 188 S.W.2d at 570 (“It is a well-established rule that in all matters pertaining to the administration of school laws involving questions of fact ... resort must first be had to the school authorities .., before the courts will entertain jurisdiction of a complaint with reference to such matters.” (quoting Sanderson, 88 S.W.2d at 1070)).
The McIntyres also seek a declaration from the trial court that Mendoza acted outside of his authority as an attendance officer and therefore violated the law. An attendance officer’s powers and duties are outlined in Texas Education Code section 25.091. Specifically, under the version of *838 the statute in effect at the time of the allegedly, unauthorized conduct, Mendoza had the authority to:
investigate each case of a violation of the compulsory school attendance requirements referred to [him]; ,,. enforce compulsory school attendance requirements by: ... referring a student to a juvenile court or filing a complaint against a student in a county, justice, or municipal court if the student has unexcused absences ... under Section 25.094 ,.. and ... filing a complaint in a ... court against a parent who violates Section 25.093; ... [and] to make a home visit or otherwise contact the parent of a student who’is in violation of compulsory school attendance requirements....
Act of May 16, 2003, 78th Leg., R.S., ch. 137, § 3, sec. 25.091(b), 2003 Tex. Gen. Laws 186, 187-88 (amended 2015) (current version at Tex. Eduo. Code § 25.091(b)). Additionally, under Education Code sections 25.091 and 25.0951(a), a school district, or attendance officer acting on behalf of the school district, shall refer a student to a truancy court if the student fails to attend school for a requisite number of days without excuse. Id. §§ 25.091, .0951(a), The version of the statute in effect when the complaints were filed against the McIntyres outlined the procedure for filing a complaint against a student or parent allegedly in violation of section 25.094 or 25,093, respectively. Act of May 30, 2005, 79th Leg., R.S., ch. 949, § 37, sec. 25.0951, 2005 Tex. Gen. Laws 3198, 3211-12 (amended 2015) (current version at Tex, Educ. Code § 25.0951(a)). The statute set out two procedures, one for when the student.missed ten or more days within a six-month period, and/or one for three or more missed days within a four-week period. Id. The Court points out that the McIntyres challenge the complaints filed by EPISD against them, which alleged that the McIntyres violated sections 25.093 and 25.094 because they had “not met Homeschool verification requirement.”[12] 499 S.W.3d at 822. The McIntyres argue that the complaints are based on a nonexistent crime because in the section of the complaint form for listing days the student has allegedly missed, the District defendants wrote “Has not met Homeschool verification requirement.” Taking the McIntyres’ allegations as true and viewing their pleadings in the light most favorable to their claims, see Williams, 353 S.W.3d at 141, Mendoza would thus have acted outside the scope of his authority under section 25.091 of the Education Code by filing a complaint that failed to comply with section 25.0951. The McIntyres’ requested declaration therefore relies on a determination of whether Mendoza exceeded his authority under the Education Code.
Furthermore, the McIntyres challenge the lawfulness of EPISD’s mandatory prosecution policy. With this requested declaration, the McIntyres necessarily allege that EPISD’s policy violates section 25.0951’s grant of authority to file a complaint. See Tex. Eduo. Code § 25.0951. EPISD and other school districts do not have authority to “prosecute” students and parents for violating attendance requirements outside of section 25.0951’s grant of authority to file a complaint in the appropriate court. Id. The Court notes that this declaration would require a determination that EPISD could not prosecute the McIn-tyres merely because they refused to provide information about their curriculum. *839 499 S.W.3d at 826-27. The Court is correct that the McIntyres’ declaration would require the trial court to determine whether EPISD could prosecute the McIntyres for refusing to provide curriculum information, but fails to recognize that EPISD’s authority to file a complaint against the McIntyres is limited by Education Code section 25.0951 to violations of section 25.093 and, now repealed, section 25.094. The McIntyres’ requested declaration would require the trial court to find that EPISD’s mandatory prosecution policy was unlawful because it exceeded EPISD’s authority' under section 25.0951.[13] Thus, the McIntyres’ challenge to the prosecution policy relies on a claim that the McIn-tyres are aggrieved by the school board’s violation of the school laws of the state.
The Court contends that the McIntyres are not aggrieved by a violation of the school laws of the state because the McIn-tyres allege that EPISD violated their rights under the Texas Constitution, giving due process as an example. 499 S.W.3d at 826. However, those allegations are rooted in the McIntyres’ claim that EPISD exceeded its authority, and EPISD’s authority to act comes from the school laws, not from the Texas Constitution. The Texas Constitution provides the Legislature with the power to set up a system of public schools. Tex. Const, art. VII, § 1 (“[I]t shall be the duty of the Legislature of the State to establish and make suitable provision for the support and maintenance of an efficient system of- public free schools.”). Therefore, it is from the Legislature and the laws passed by the Legislature, i.e., the Education Code, that school districts derive their authority to act. The McIn-tyres’ allegation that EPISD exceeded its authority by enacting its mandatory prosecution policy is thus an allegation that EPISD violated the school laws.
The Court also contends the McIntyres assert that the Texas Constitution limits Mendoza’s and EPISD’s authority, and so the McIntyres are not aggrieved by the school laws, but by Mendoza’s and EP-ISD’s actions that allegedly violated the Texas Constitution. 499 S.W.3d at 828. However, while the McIntyres do allege that Mendoza and EPISD. violated then-equal protection, due process, and privacy rights under the Texas Constitution, it is because Mendoza and EPISD allegedly acted outside of their authority under the Education Code that the McIntyres’ constitutional rights were .allegedly violated. The McIntyres’ constitutional claims and request for declaratory judgment are dependent on findings that EPISD lacks the authority under .the Education Code, as interpreted by Leeper, 893 S.W.2d at 443-44, to inquire into .a homeschool family’s curriculum and that Mendoza and EPISD, therefore, acted outside of their authority under the Education Code. See Peavy, 37 S.W. at 319 (holding that a parent is aggrieved when her rights as a parent are infringed by actions taken under or in violation of a statutory scheme).
The Court suggests that section 7.057(a)(1) is implicated only when a plaintiff challenges a statute or an agency’s rule
*840 directly, and- that the exhaustion requirement does not apply when a plaintiff challenges a school district’s actions pursuant to its authority under the school laws of the state. As we recently recognized in Clint ISD, “[f]or well over one hundred years, we have held that persons complaining about the ‘management of the school system’ or the ‘administration of school laws’ must exhaust their administrative remedies before courts can exercise jurisdiction.” 487 S.W.3d at 546. As far back as 1892, this Court recognized that “the authority of the courts to interfere with the management of the school system, at the instance of citizens or school officials, does not ordinarily exist” and should be “exercised with great caution, and in cases of imperative emergency.” Nance v. Johnson, 84 Tex. 401, 19 S.W. 559, 559-60 (1892) (internal quotations omitted) (“[W]hen ... the wrongs complained of are alleged to have been committed by subordinate officers, and when no effort is shown to correct or redress them [through administrative processes], a manifest and urgent necessity to protect legal rights clearly violated, and to prevent irreparable injury, can alone warrant judicial interference.”). Relying on that authority, courts have long recognized the importance of the administrative process in resolving disputes that arise from the administration of the school laws or management of the school system. See, e.g., Huntington Indep. Sch. Dist. v. Scroggins, 9 S.W.2d 171, 172 (Tex.Civ.App.-Beaumont. 1928, no writ) (holding that a teacher had no right to take her case against the school district to the courts because the Legislature intended to place educational affairs under the jurisdiction of the department of education, and those aggrieved by the actions of school officials, “on any matter, committed to them by statute,” must first exhaust administrative remedies before seeking redress in the trial court); Johnson v. City of Dall, 291 S.W. 972, 972-73 (Tex.Civ. App.-Dallas 1927, writ dism’d w.o.j.) (“[0]ur appellate courts have uniformly held that the Legislature intended to and did place the educational affairs of the state under the jurisdiction of the department of education, and provided specifically for appeals from the rulings and decisions of subordinate school officers to the superintendent of public instruction, and from the ruling of this official to the state board of education. As primary jurisdiction to revise the action of subordinate school officials is lodged with the department of education, it will be conclusively presumed that the department, acting within the scope of its jurisdiction, will correctly and faithfully discharge its duties, and those aggrieved by the action of subordinate officials, on any matter committed to them by the statute, must exhaust these remedies before appealing to the courts for redress.”); Donna Indep. Sch. Dist. v. First State Bank, 227 S.W. 974, 975 (Tex.Civ.App.-San Antonio 1921, no writ) (“[I]t has been uniformly held by the courts of Texas that an appeal to and decision by the State Superintendent is absolutely essential to give a court the authority to pass upon the question. It seems to be the fixed policy of the Legislature to create an educational system of public free schools that is sufficient unto itself and free as far as practical from any interference by the judiciary. The courts fully recognize the desire of the legislative branch of the state government and uniformly hold that the remedies provided for before school authorities must be exhausted before the courts will interfere.”). While the Education Code’s exhaustion requirement applies only to the types of claims that section 7.057(a) describes, see Clint ISD, 487 S.W.3d at 546, interpreting section 7.057(a)(1) to exclude claims based on a school district’s administration of school laws runs counter to more than a *841 century of jurisprudence. Even the Texas Education Agency’s own rules require a petition for a hearing before the Commissioner to describe the “challenged ruling, action, or failure to act.” 19 Tex. Admin. Code § 157.1073(c)(1) (emphasis added). I would construe section 7.057(a)(1) to require exhaustion of administrative remedies when a plaintiffs claim requires a determination of a school district’s authority in administering the school laws.
In concluding that the McIntyres were aggrieved by Mendoza’s and EPISD’s actions as opposed to the school laws, the Court uses hypotheticals based on violations of the First and Fourth Amendments of the United States Constitution. 499 S.W.3d at 822. The Court’s examples, however, are distinguishable from this case. In its first example, the Court posits that when a student alleges an unreasonable search by a school security officer, she is not aggrieved by the school district’s authority to hire the security officer, but by the officer’s unreasonable search. Id. at 828. I do not disagree with that analysis, but that scenario is irrelevant to the case here. In this case, the source of the McIn-tyres’ grievances is EPISD’s use of its authority under the Education Code to investigate and prosecute parents and students who do not comply with section 25.085(a)(l)’s compulsory attendance requirement. EPISD has allegedly injured the McIntyres through the means or instrumentality of its authority under the school laws, making the McIntyres subject to the exhaustion requirements under section 7.057(a).
The Court next posits' that when a school suppresses speech or engages in viewpoint discrimination, the student is aggrieved by the school district’s decision violating the First Amendment, not by the school district’s authority to maintain order under the Education Code. 499 S.W.3d at 824-25. Once again, I do not disagree with the Court’s conclusion, but I disagree that the example applies here. As the Court notes, the First Amendment prohibits schools from suppressing speech when the speech would not “materially and substantially interfere” with maintaining order at school. Tinker v. Des Moines Indep. Cmty. Sch. Dist., 393 U.S. 503, 509, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969). However, the First Amendment does not limit the school district’s authority to silence speech that does “materially and substantially interfere” with maintaining order under the school district’s authority pursuant to the Education Code. See Morse v. Frederick, 551 U.S. 393, 397, 127 S.Ct. 2618, 168 L.Ed.2d 290 (2007) (“[Sjchools may take steps to safeguard those entrusted to their care from speech that can. reasonably be regarded as encouraging illegal drug use.”). Regardless, in a First Amendment case, the student is not challenging the school district’s authority to maintain order under the Education Code, but the school district’s violation of the First Amendment by restricting speech.
The Court could give countless hypo-theticals similar to the ones given, but it does not change the facts of this case. Here, the McIntyres are directly challenging-EPISD’s authority under the Education Code to file complaints against them alleging violations of Education Code sections 25.093 and 25.094 based on lack of homeschool verification and EPISD’s authority to request such verification. There is no question in this case about whether a school district has authority' to illegally search a student, unlawfully seize and search parents, or any other far-fetched scenario. Unlike the unrealistic and hyperbolic examples given by the Court, the true nature of the McIntyres’ claims revolves around the question of what a school district has authority to do under *842 the Education Code to determine compliance with our decision in Leeper.
Even construed in the light most favorable to the McIntyres, the petition as a whole clearly reflects that the core issue in this case is whether a- school district, in carrying out its duties under section 11.002, can demand homeschool verification and bring charges for violation of the Education Code if the parent fails to provide such verification. See Tex. Eduo. Code § 11.002. ■ In fact, in their brief to this Court, the McIntyres state that the issue presented in-the case is “the District’s legal authority to demand use of a particular curriculum.” The McIntyres, in their pleadings to the trial court, have twice declared that “the object [of the case] has been, and is, a declaration ... [and] injunction, to interpret/enforce state law as applied to [EPISD’s] policy/custom of dealing with home educated students arid/or how [the McIntyres] were dealt with.”
As this Court has stated time and time again, the purpose of the requirement to exhaust administrative remedies is to ensure that “‘the appropriate body adjudicates the dispute’ first.” Clint ISD, 487 S.W.3d at 544 (quoting Essenburg v. Dall. Cty., 988 S.W.2d 188, 189 (Tex.1998) (per curiam)). The McIntyres should not be allowed to avoid the exhaustion requirement by alleging “constitutional misdeeds.” Jones, 46 S.W.3d at 474 (noting that allowing avoidance of the exhaustion requirement “by the simple allegation of constitutional misdeeds” would “likely corrupt the entire process”). However, that is exactly what the Court is allowing the McIntyres to do here. I cannot agree and, therefore, cannot join the Court.
It is clear that the McIntyres’ claims arise out of their alleged injury caused by EPISD’s direct application of the school laws or by EPISD’s alleged violation of the school laws. The school district and the Commissioner of Education are better situated than the court to resolve the McIn-tyres’ grievances. After exhausting administrative remedies, the McIntyres would then have the opportunity to “file suit and have the courts review the agency’s decision.” Clint ISD, 487 S.W.3d at 544. The McIntyres are persons “aggrieved by ... the school laws of this state” or a school board’s actions that violate the school laws of the state under section 7.057(a) and must, therefore, exhaust administrative remedies. Tex. Educ. Code § 7.057(a).
III. Conclusion
The Court holds that a party can circumvent the Legislature’s exhaustion-of-administrative-remedies requirement through creative pleading. Because the Court’s interpretation of section 7.057(a)(1) effectively nullifies that provision, contrary to the intent of the Legislature, and because the Court ignores the true nature of the McIntyres’ claims, I respectfully dissent.

. Laura received a message back, requesting an informal, optional form for EPISD’s files, but the McIntyres never sent in a form.

. Tori also refused to take any placement exams that could have put her into a higher grade because she was afraid that she would fail.

. Mark Mendoza became Director of Pupil Services in July 2006, several months after EPISD’s first visit with the McIntyres.

. The McIntyres were provided an attorney by the Home School Legal Defense Association (HSLDA), an organization they were members of. The HSLDA attorney asked the counselor to fax the homeschool verification form to him, which she did.

. It is undisputed that the McIntyres’ HSLDA attorney at the time, Christopher Klicka, while licensed to practice law in Virginia, was not licensed to practice law in Texas.

. Moore moved to dismiss against the children because he felt that their parents were the parties responsible for keeping the children out of school. Moore later moved to dismiss against the McIntyres because Tori would not testify against her parents and because he was told by the grandparents’ attorney that the McIntyres had a curriculum.

. The McIntyres have conceded that their TRFRA claims are barred by statute because they failed to provide pre-suit notice to EP-ISD or its employees,

. While this Court has held that various vendors were not required to exhaust administrative remedies because their claims did not allege a violation of Texas school laws, we have never held that they were not required to exhaust administrative remedies because of *834 their status as vendors. See, e.g., Fort Worth Indep. Sch. Dist. v. Serv. Emp't Redevelopment, 243 S.W.3d 409, 610 (Tex.2007) (per curiam) (holding that "a vendor’s claim for breach of a contract to provide a school district services ... does not complain of a violation of Texas school laws”); Columbus Indep. Sch. Dist. v. Five Oaks Achievement Ctr., 197 S,W.3d 384, 385 (Tex.2006) (per curiam) (same); Spring Branch Indep. Sch. Dist. v. Metalab Equip. Co., 381 S.W.2d 48, 48 (Tex.1964) (per cu-riam) (holding that a claim for breach of a contract to buy laboratory equipment was not “a matter properly belonging to the administration of school laws”).

. The Court and the McIntyres seem to think that requiring the McIntyres to exhaust their administrative remedies would prejudice or burden them. However, we have stated multiple times, and most recently in Clint ISD, that the exhaustion requirement "does not deprive parties of their legal rights.” Clint ISD, 487 S.W.3d at 544; accord Rhule, 417 S.W.3d at 442; see Tex. Educ. Code § 7.057(b) ("This section does not deprive any party of any legal remedy.”). Administrative remedies are meant to keep educational disputes out of courts when possible and provide an "orderly procedure” to enforce . a party's rights. Rhule, 417 S.W.3d at 442. In fact, if a party is not satisfied with the outcome of the administrative process, the party "may file suit and have the courts review the agency’s decision.” Clint ISD, 487 S.W.3d at 544. Requiring the McIntyres to exhaust their administrative remedies, therefore, would not deprive them of access to the courts, but simply require them to seek relief from the school district and the Commissioner first. If the school district and Commissioner do not provide them with their requested relief, the McIntyres could then bring their claims to the district court. Of course, if the McIntyres would suffer irreparable harm by exhausting administrative remedies, they could bring their case directly to the court. See Hous. Fed'n of Teachers, Local 2415 v. Hous. Indep. Sch. Dist., 730 S.W.2d 644, 646 (Tex.1987) ("Parties are not required to pursue the administrative process regardless of the price. If irreparable harm will be suffered and if the agency is unable to provide relief, the courts may properly exercise their jurisdiction in order to provide an adequate remedy.”). The McIntyres do not allege irreparable harm, however, and nothing in this record suggests that pursuing administrative remedies would cause them irreparable harm.

. Of course, the most recently amended petition is the live pleading, see Tex. R. Civ. P. 65, but I reference an earlier version of the McIn-tyres’ petition because it is instructive as to the nature and evolution of their claims. See Williams, 353 S.W.3d at 141 (viewing the pleadings as a whole to ascertain the pleader's intent).

. While this case was pending before this Court, the Legislature repealed section 25.094 and amended relevant sections of the Education Code and Family Code to decriminalize truant conduct by students. Act of May 30, 2015, 84th Leg., R.S., ch. 935, § 41(2), sec. 25.094, 2015 Tex. Sess. Law Serv. Ch. 935.

. According to the version of section 25.0951 in effect at the time the complaints were filed, "[a] court shall dismiss a complaint or referral made by a school district under this section that is not made in compliance with this section.” Act of May 30, 2005, 79th Leg., R.S., ch. 949,’§ 37, 2005 Tex. Gen. Laws 3198, 3211-12 (amended 2015) (current version at Tex. Educ. Code § 25.0951(c)). The current version of section 25.0951(c) states: "A court shall dismiss a complaint made by a school district ,., that: (1) does not comply with this section; (2) does not allege the elements required for the offense; (3) is not timely filed ... ; or (4) is otherwise substantially, defective.” Tex. Educ. Code § 25.0951(c).